**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| **J.M.D.,** <br><br> **Petitioner,** <br><br> **v.** <br><br> **Warden, STEWART DETENTION CENTER,[1]** <br><br> **Respondent.** | : | **Case No. 4:26-cv-00648-CDL-CHW** <br> **28 U.S.C. § 2241** |

## ORDER AND RECOMMENDATION

Before the Court is Petitioner J.M.D.'s application for a writ of habeas relief pursuant to 28 U.S.C. § 2241 (Doc. 1) as well as Respondent's Motion to Dismiss (Doc. 8). For the following reasons it is **RECOMMENDED** that Respondent's Motion to Dismiss (Doc. 8) be **GRANTED** and that Petitioner's application for habeas relief (Doc. 1) be **DISMISSED**.

## BACKGROUND

Petitioner is a native and citizen of Cuba. (Doc. 8-1 at ¶ 4); *see also* (Doc. 8-2). On or about June 13, 1980, Petitioner was paroled into the United States during the Mariel Boat Lift. (Doc. 8-1 at ¶ 5); *see also* (Doc. 8-2); (Doc. 8-9). On July 7, 1999, Petitioner was issued a Notice to Appear

[1] [T]he default rule [for claims under 28 U.S.C. § 2241] is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (citations omitted). The Clerk's office is **DIRECTED** to change the docket to reflect the Warden of Stewart Detention Center as the sole appropriately named respondent in this action.

("NTA") charging him with inadmissibility under 8 U.S.C. §§ 1182(a)(2)(A)(i)(I)[2] and 1182(a)(7)(A)(i)(I)[3] based on the following criminal convictions:

> 1. Attempted Armed Robbery and Battery in Dade County, Florida in violation of Fla. Stat. §§ 812.13(2)(a)(b); 777.04; 777.011; and 784.03 on December 14, 1994;
>
> 2. Uttering a Forged Instrument/Check and Grand Theft Third Degree in Dade County, Florida in violation of Fla. Stat. §§ 831.02 and 812.014(a)(c)(1) on April 14, 1997; and
>
> 3. Grand Theft third Degree in Dade County, Florida in violation of Fla. Stat. § 812.014(a)(c)(1) on April 14, 1997.
>
> (Doc. 8-2).

All of the crimes cited in Petitioner's July 7, 1999, NTA are considered crimes involving moral turpitude. *Id*. On December 3, 1999, an Immigration Judge ("IJ") ordered Petitioner removed to Cuba, after which Petitioner did not file an appeal. (Doc. 8-4); *see also* (Doc. 8-1 at ¶ 9).

Petitioner entered the custody of Immigration and Customs Enforcement/Enforcement Removal Operations ("ICE/ERO") multiple times between his December 3, 1999, final removal order and the present day. On January 11, 2000, ICE/ERO arrested Petitioner the first time but released him on parole on July 6, 2000. (Doc. 8-1 at ¶ 10). On July 22, 2004, ICE/ERO arrested

---

[2] 8 U.S.C. § 1182(a)(2)(A)(i)(I) provides:

> Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of – a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime. . . is inadmissible.
>
> 8 U.S.C. § 1182(a)(2)(A)(i)(I).

[3] 8 U.S.C. § 1182(a)(7)(A)(i)(I) provides:

> Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission – who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title. . . is inadmissible.
>
> 8 U.S.C. § 1182(a)(7)(A)(i)(I).

Petitioner a second time and released him on February 1, 2005, on his first Order of Supervision ("OSUP"). (Doc. 8-1 at ¶ 11); *see also* (Doc. 8-5). On or about March 11, 2011, ICE/ERO detained Petitioner a third time after he served a prison sentence for Possession of a Schedule II Controlled Substance. (Doc. 8-1 at ¶ 12). On July 15, 2011, ICE/ERO released Petitioner on his second OSUP. (Doc. 8-1 at ¶ 13); *see also* (Doc. 8-6). On or about December 1, 2017, ICE/ERO arrested Petitioner a fourth time and released him on his third OSUP on May 22, 2018. (Doc. 8-1 at ¶ 14); *see also* (Doc. 8-8). On October 17, 2019, ICE/ERO arrested Petitioner a fifth time and released him on November 14, 2019, on his fourth OSUP. (Doc. 8-1 at ¶ 15); *see also* (Doc. 8-10).

On March 30, 2026, ICE/ERO arrested Petitioner a sixth time after encountering him at the Dekalb County Jail following an arrest and probation violation based on charges of burglary in the second degree and theft by taking. (Doc. 8-1 at ¶ 17); *see also* (Doc. 8-1 at 16). Petitioner was also issued a Warning for Failure to Depart. (Doc. 8-1 at ¶ 17). Petitioner's Warning for Failure to Depart clearly states the potential criminal consequences for refusing to cooperate throughout deportation and removal proceedings:

> Any alien against whom a final order of removal is outstanding by reason of being a member of any of the classes described in section 237(a) who –
>
> > (A) willfully fails or refuses to depart from the United States within a period of 90 days[] from the date of the final order of removal under administrative processes, or if judicial review is had, then from the date of the final order of the court,
> > (B) willfully fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure,
> > (C) connives or conspires, or takes any other action, designed to prevent or hamper or with the purpose of preventing or hampering the alien's departure pursuant to such, or
> > (D) willfully fails or refuses to present himself or herself for removal at the time and place required by the Attorney General pursuant to such order,

> shall be fined under title 18, United States Code, or imprisoned not more than four years (or 10 years if the alien is a member of any of the classes described in paragraph (1)(E), (2), (3), or (4) of section 237(a)), or both.

(Doc. 8-11) (*citing* 8 U.S.C. 1253(a)).

Petitioner's Warning for Failure to Depart also lists the items Petitioner was required to complete within thirty (30) days of receiving the form. (Doc. 8-11 at 2). These tasks include submitting passports, applying for travel documents, and providing names of relatives, all to assist in removal proceedings. *Id*. On May 8, 2026, ICE/ERO began procedures for Petitioner's third-country removal to Mexico. (Doc. 8-1 at ¶ 19). On May 11, 2026, ICE/ERO submitted documents to begin the process to revoke Petitioner's sixth OSUP. (Doc. 8-1 at ¶ 20).

On April 10, 2026,[4] Petitioner filed his application for habeas relief. (Doc. 1). Petitioner requests that he be released on another OSUP for two reasons: (1) his removal to Cuba is not reasonably foreseeable as a Cuban immigrant from the Mariel Boat Lift; and (2) he does not consent to third-country removal to Mexico. *Id*. Petitioner asserts four grounds in support of his request for habeas. *Id*. at ¶ 13. In Ground One, Petitioner asserts "No Deportation/Removal in Foreseeable Future," arguing that Cuba will not accept him or issue travel documents because he came to the United States in the Mariel Boat Lift and his name is not on the "Migrate Accord." *Id*. In Ground Two, Petitioner claims that he has "been detained by ICE for removal proceedings well over 36 months." *Id*. In Ground Three, Petitioner states that ICE is "attempting to physically remove Cubans via the Mexican border without passports [and] with a financial proposition for the deportees to comply" and that he "is not going to comply/assist in any removal from USA to any other country. . ." *Id*. In Ground Four, Petitioner appears to claim that his removal is not

[4] Respondent is correct that the Prison Mailbox Rule dictates April 10, 2026, as the filing date. *See* (Doc. 8 at 6, fn 1).

reasonably foreseeable, again under the theory that since Petitioner's prior habeas claims requesting release on an OSUP were granted, this request for habeas should be granted as well. *Id*. Petitioner presents the same post-final order prolonged detention and third country removal arguments throughout his subsequent Motions for Injunction. *See* (Doc. 5); *see also* (Doc. 7); (Doc. 11); (Doc. 12); (Doc. 18).

## DISCUSSION

Respondent argues Petitioner's application for habeas is premature under the *Zadvydas* prong one analysis. (Doc. 8 at 4–8); *see also Zadvydas v. Davis*, 533 U.S. 678 (2001). While Respondent does not raise jurisdictional arguments in his Response, the Court begins its legal analysis with a jurisdiction determination, as habeas courts have limited subject matter jurisdiction on immigration matters. *See Mahdawi v. Trump*, No. 25-1113 at 19 (2d Cir. 2025) (outlining that 8 U.S.C. § 1252(b)(9) was amended to provide a zipper clause that, unless otherwise provided in the section, no habeas jurisdiction exists to review an order of removal or such questions of law and fact)

### I. Jurisdictional Analysis

Jurisdiction exists to review post-final order prolonged detention claims under 8 U.S.C. § 1231 and *Zadvydas*. 8 U.S.C. § 1231; *see also Zadvydas*, 533 U.S. 678. However, Petitioner's third-country removal claim is not ripe and is recommended for dismissal. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). In other words, this Court may only hear a case over which it has subject matter jurisdiction. *See id*. There are generally three ways a party may establish subject matter jurisdiction in federal court:

"(1) jurisdiction pursuant to a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332." *Hallett v. Ohio*, 711 F. App'x 949, 950 (11th Cir. 2017) (per curiam) (citation omitted). "[T]he party invoking the court's jurisdiction bears the burden of proving the existence of federal jurisdiction," and if "the district court lacks subject matter jurisdiction, it has no power to render a judgment on the merits and should dismiss the complaint. . ." *Id.*

The Immigration and Nationality Act ("INA"), at 8 U.S.C. § 1252(a)(2)(B), provides for the judicial review of orders of removal. Section 1252(a)(2)(B)(ii) states that

> [n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).

Similarly, 8 U.S.C. § 1252(g) provides:

> except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter

8 U.S.C. § 1252(g).

Section 1252(g) is narrowly read, so that it blocks courts from exercising jurisdiction over only "three discrete actions[: the] 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 487 (1999) (quoting Section 1252(g)). The Supreme Court has held that jurisdiction exists to review post-final order prolonged detention claims in habeas proceedings. *Zadvydas v. Davis*, 533 U.S.

678. This Court has previously reviewed such claims as well. *See J.A.S. v. Warden, Stewart Det. Ctr.*, No. 4:25-CV-244-CDL-CHW, 2025 WL 3777151 (M.D. Ga. Oct. 14, 2025), report and recommendation adopted, No. 4:25-CV-244 (CDL), 2025 WL 3776726 (M.D. Ga. Dec. 31, 2025); *see also Y.R.V. v. Warden, Stewart Det. Ctr.*, No. 4:25-CV-333-CDL-CHW, 2026 WL 1073835 (M.D. Ga. Feb. 23, 2026), report and recommendation adopted, No. 4:25-CV-333 (CDL), 2026 WL 1072997 (M.D. Ga. Apr. 20, 2026). However, jurisdiction to review third-country removal largely depends on statutory interpretation and exhaustion of administrative procedures. *See Dept. of Homeland Sec., et al v. D.V.D.*, et al., No. 26-426 (U.S. Sup. Court 2026) (granting a writ of certiorari to review whether the district court has jurisdiction to review third-country removal claims).

"Article III of the Constitution confines federal courts' jurisdiction to deciding live cases and controversies. . .The ripeness doctrine prevents federal courts from prematurely deciding issues that are abstract, hypothetical, or speculative." *Nasyrov v. Marin*, No. 5:26-CV-01167-SRM-DSR, 2026 WL 1850022 at 7 (C.D. Cal. May 12, 2026) (holding that review of petitioner's due process claim through third-country removal was not ripe because it was only speculative that he be removed to a third country without notice or an opportunity to be heard); *see also* U.S. Const. art. III, § 2. A petition filed under Section 2241 is not ripe because petitioners ". . .seeking habeas relief pursuant to § 2241 are subject to administrative exhaustion requirements." *Krist v. Eichenlaub*, 386 F. App'x 920 (11th Cir. 2010). A court in the United States District Court for the Middle District of Florida has explained that a noncitizen's challenge to third-country removal is not ripe where "he has not shown that he actually attempted to use the agency's established administrative procedures to challenge this new destination." *Olivera-Perez v. Noem*, No. 2:26-CV-944-KCD-DNF, 2026 WL 1251688 (M.D. Fla. May 7, 2026) (holding that no jurisdiction

existed to review petitioner's third-country removal claim because it was not ripe under Section 1231(b)).

Third-country removal requires additional administrative procedures for both the Government and for the noncitizen. 8 U.S.C. § 1231(b) sets forth criteria for the removal location for noncitizens. Generally, the noncitizen may designate the country to which he is to be removed if he is not an "arriving alien." 8 U.S.C. § 1231(b)(2)(A)-(B). However, the noncitizen's delegated country for removal may be disregarded under certain conditions. *See* 8 U.S.C. § 1231(b)(2)(C). If the noncitizen is not removed to the country of his choice, the Attorney General is required to remove the noncitizen "to a country of which the alien is a subject, national, or citizen," unless the government of the country either does not inform the United States of its willingness to accept the noncitizen into the country within thirty days or is not willing to accept the noncitizen. 8 U.S.C. § 1231(b)(2)(D). Section 1231(b)(2)(E) then provides third-country removal options for aliens that cannot be removed under Sections 1231(b)(2)(A)-(D):

> If an alien is not removed to a country under the previous subparagraphs of this paragraph, the Attorney General shall remove the alien to any of the following countries:
>
> **(i)** The country from which the alien was admitted to the United States.
> **(ii)** The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States.
> **(iii)** A country in which the alien resided before the alien entered the country from which the alien entered the United States.
> **(iv)** The country in which the alien was born.
> **(v)** The country that had sovereignty over the alien's birthplace when the alien was born.
> **(vi)** The country in which the alien's birthplace is located when the alien is ordered removed.
> **(vii)** *If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country.*

8 U.S.C. § 1231(b)(2)(E) (emphasis added).

Third country removal under Section 1231(b)(2)(E)(vii) is limited when "the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § Section 1231(b)(3)(A). This statutory limitation on third-country removal does not apply where the alien has been convicted of "a particularly serious crime" and is found to be "a danger to the community of the United States." 8 U.S.C. § 1231(b)(3)(B)(ii). A "particularly serious crime" exists where ". . .an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to the aggregate term of imprisonment of at least 5 years…" *Id*. No consent is required for a noncitizen to be removed to a third country. *See* 8 U.S.C. § 1231(b).

Three of the four grounds in Petitioner's application for habeas focus on arguments raised in post-final order prolonged detention claims. Petitioner argues that his removal is not reasonably foreseeable and that he has been detained in excess of thirty-six (36) months. (Doc. 1 at ¶ 13). The remaining ground raised by Petitioner concerns an objection to his removal to Mexico, a third country. *Id*. Petitioner's third-country removal claim is not ripe before the court, given that the only evidence before the Court on third-country removal is a general objection raised by Petitioner in his Ground Three. *Id*. Petitioner has presented no evidence to indicate that the administrative procedures for third-country removal under Section 1231(b)(9) have been completed. Rather, Petitioner makes a general assertion that he does not consent to third-country removal to Mexico. *Id*. Petitioner's consent is not required for third-country removal. *See* 8 U.S.C. § 1231(b). Because this administrative procedure has not been pursued, Petitioner's third-country removal claim is not ripe for consideration by the Court.

**II. Post-Final Order Prolonged Detention**

Petitioner's remaining allegations focus on a post-final order prolonged detention claim under 8 U.S.C. § 1231 and *Zadvydas*. 533 U.S. 678. Generally, ". . . the Attorney General shall remove the alien from the United States within a period of 90 days" after an alien is ordered removed. 8 U.S.C. § 1231(a)(1)(A). The ninety-day removal period starts on the latest of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of an alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* at 1231(a)(1)(B)(i)-(iii).

While this ninety-day removal period takes place, ". . . the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title." 8 U.S.C. § 1231 (a)(2)(A). An alien may be detained beyond the ninety-day removal period if said alien is ". . . ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal . . ." 8 U.S.C. § 1231(a)(6). The Supreme Court of the United States further interpreted 8 U.S.C. § 1231(a)(6) to include detention beyond the ninety-day period if it is "reasonably necessary" to effectuate removal in *Zadvydas*. 533 U.S. 678; *see also* 8 U.S.C. § 1231(a)(6).

The Court recognized six months as a presumptively reasonable time period to allow the government to accomplish removal under 8 U.S.C. § 1231(a)(6). *Zadvydas*, 533 U.S. at 701. The Eleventh Circuit explained that a *Zadvydas* claim requires a two-part showing by the petitioner: "…an alien must show that: (1) he has been detained for more than six months following the final order of removal and (2) there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Vaz v. Skinner*, 634 F. App'x 778 (11th Cir. 2015); (*relying on Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir.2002)). Once the petitioner has met his burden to show the two *Zadvydas* prongs, the burden shifts to the respondent to rebut that showing. *Zadvydas*, 533 U.S. at 701.

Petitioner's initial burden to show that he has been detained more than six months (i.e. *Zadvydas* prong one) is strictly construed to "serve as a gatekeeping function to ensure that federal courts are not unnecessarily weighed down with hasty complaints by impatient illegal aliens who seek premature release back into American communities." *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1364 (N.D. Ga. 2002). Courts in the Middle District of Georgia have consistently held that a petitioner's detention period does not begin until he or she is in ICE custody after serving any criminal prison sentence. *Meskini v. Att'y Gen. of United States*, No. 4:14-CV-42-CDL, 2018 WL 1321576, at *4 (M.D. Ga. Mar. 14, 2018) ("A strong argument exists that the *Zadvydas* removal period did not even begin until . . . Petitioner was returned to ICE custody after serving his criminal prison sentence."); *see also M.K. v. Warden, Stewart Det. Ctr.*, No. 4:23-cv-136-CDL-MSH (M.D. Ga. filed Oct. 19, 2023), (report and recommendation adopted, No. 4:23-cv-136-CDL-MSH (M.D. Ga. filed Dec. 1, 2023))(reasoning that "[f]inding Petitioner's current detention presumptively unreasonable because of a period of detention occurring over eleven years ago would effectively eviscerate § 1231(a)'s purpose of allowing the Government time to arrange for an alien's removal,

including contacting foreign consulates and obtaining necessary travel documents"); *J.A.S. v. Warden, Stewart Det. Ctr.*, No. 4:25-cv-244-CDL-CHW (M.D. Ga. filed Oct. 27, 2025), report and recommendation adopted, No. 4:25-cv-244-CDL-CHW (M.D. Ga. filed Dec. 31, 2025) (finding that Petitioner's Motion to Dismiss was premature because Petitioner failed to prove that he was detained for more than six months from the time of detainment to the time of filing his petition).

"District courts are split on whether prior time in ICE custody should be aggregated to satisfy the six-month *Zadvydas* clock. Some have firmly rejected this cumulative approach. . . other courts have treated the *Zadvydas* period as cumulative." *Tran v. Warden, Fla. Soft Side S. Det. Ctr.*, No. 2:25-CV-1224-KCD-NPM, 2026 WL 672969 at *4 (M.D. Fla. Mar. 10, 2026). Courts in the Eleventh Circuit have found that "the better approach is to afford the government a new six-month presumptively reasonable period for each discrete detention, unless there are facts suggesting the government is acting with an improper motive." *Id.* This Court has rejected the cumulative approach, reasoning that *Zadvydas* is not a "permanent 'Get Out of Jail Free Card' that may be redeemed at any time just because an alien was detained too long in the past." M.K., No. 4:23-cv-136-CDL-MSH at *6 (*citing Meskini v. Att'y Gen. of United States*, No. 4:14-CV-42-CDL, 2018 WL 1321576, at *4 (M.D. Ga. Mar. 14, 2018).

Petitioner cannot claim a "Get Out of Jail Free Card" to add up his prior detention periods and cumulatively satisfy the first six-month prong of *Zadvydas*. Petitioner's current clock started on March 30, 2026, his most recent re-entry date for ICE/ERO custody. (Doc. 8-1 at ¶ 17). Petitioner filed his habeas petition only eleven (11) days after entering custody on April 10, 2026. (Doc. 1 at 9). Petitioner's prior detention does not accumulate with his current detention period in ICE/ERO custody. Petitioner has failed to show that a six-month reasonable time period elapsed from the start of his detention to the filing of his habeas application. (Doc. 8-1 at ¶ 17); see also

(Doc. 1). Although Petitioner's detention has now passed the six-month presumptively reasonable time frame, and a Section 2241 petition filed today or tomorrow would not be dismissed as premature, the Eleventh Circuit has made it clear that the "six-month period… must have expired at the time [the petitioner's] § 2241 petition was filed in order to state a claim under *Zadvydas*." *Akinwale*, 287 F.3d at 1052 (affirming "dismissal without prejudicing [the petitioner's] ability to file a new § 2241 petition in the future that may seek to state a claim upon which habeas relief can be granted"). Petitioner is not prohibited from filing a subsequent petition, but case law indicates no alternative to dismissing his current petition as premature.[5] Therefore, Petitioner fails to meet his burden of proof under the first *Zadvydas* prong to show that he has been detained over six months from the time of detainment to the time of filing his Petition.

## CONCLUSION

Before the Court is Petitioner J.M.D.'s application for a writ of habeas relief pursuant to 28 U.S.C. § 2241 (Doc. 1) as well as Respondent's Motion to Dismiss (Doc. 8). For the following reasons it is **RECOMMENDED** that Respondent's Motion to Dismiss (Doc. 8) be **GRANTED** and that Petitioner's application for habeas relief (Doc. 1) as well as his Motions for Injunction (Doc. 5; Doc. 7; Doc. 11; Doc. 18) be **DISMISSED**.

Petitioner has also filed numerous miscellaneous motions, including a Motion to be Assigned Pro Se (Doc. 4), three Motions for an Evidentiary Hearing (Doc. 6; Doc. 19; Doc. 21),

---

[5] Petitioner recently filed a second habeas application in Case No. 4:26-cv-1247. *J.M.D. v. Warden, Stewart Detention Center, et al.*, No. 4:26-cv-1247, Doc. 1 (October 5, 2026). While many of the issues raised in Petitioner's second petition repeat the issued raised in the present case, the Court refrains from ruling on Case No. 4:26-cv-1247 at this time to allow Respondent adequate time to respond to Petitioner's second petition in Case No. 4:26-cv-1247.

and a Motion to Appoint Counsel (Doc. 22). In light of this Recommendation, these motions (Doc. 4; Doc. 6; Doc. 19; Doc. 21; Doc. 22) are hereby **TERMINATED** as moot.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. Any objection is limited in length to TWENTY (20) PAGES. See M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 13th day of October, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge